UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD MCCOY JR. | ) | CASE NO. |
| 1301 Cooper Foster Park Road | ) | |
| Amherst, Ohio 44001 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| O.E. MEYER CO. | ) | |
| 2005 East 28th Street | ) | **JURY DEMAND ENDORSED** |
| Lorain, Ohio 44055 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| O.E. MEYER CO. | ) | |
| c/o Black River Corporate Services Inc. | ) | |
| 35765 Chester Road | ) | |
| Avon, Ohio 44011 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| PAUL REVOLINSKY | ) | |
| c/o O.E. Meyer Co. | ) | |
| 1232 Edwards Ave | ) | |
| Lakewood, Ohio 44107 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| MARTY MATAKOVICH | ) | |
| c/o O.E. Meyer Co. | ) | |
| 3303 Tiffin Avenue | ) | |
| Sandusky, Ohio 44870 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Donald McCoy Jr., by and through undersigned counsel, as his Complaint against

the Defendants, states and avers the following:

**PARTIES**

1.    McCoy Jr. is a resident of the City of Amherst, County of Lorain, State of Ohio.

1

2. O.E. Meyer Co. (hereinafter "OEM") is a domestic corporation that operated a business located at 2005 E 28th Street, Lorain, Ohio, 44055.

3. OEM was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

4. Upon information and belief, Defendant Paul Revolinsky is a resident of the State of Ohio.

5. Revolinsky was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at OEM who acted directly or indirectly in the interest of OEM.

6. Revolsinsky was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

7. Revolinsky made and/or participated in the adverse actions asserted herein.

8. Upon information and belief, Defendant Marty Matakovich is a resident of the State of Ohio.

9. Matakovich was at all times hereinafter mentioned, an individual who was a manager and/or supervisor at OEM. who acted directly or indirectly in the interest of OEM.

10. Matakovich was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

11. Matakovich made and/or participated in the adverse actions asserted herein.

12. All of the material events alleged in this Complaint occurred in Lorain County.

## JURISDICTION & VENUE

13. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that McCoy, Jr. is alleging federal law claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

14.     This Court has personal jurisdiction over OEM because it is a for-profit corporation that is registered to conduct business in this District, and at all times material to the allegations contained herein, conducted substantial business in this District and had sufficient minimum contacts within this District.

15.     Venue is properly placed in the United States District Court for the Northern District of Ohio, Eastern Division, pursuant to 28 U.S.C.§ 1391, because it is the district court of the district, division, and county within which OEM operated and where a substantial part of the events or omissions giving rise to the claim occurred.

16.     Within 300 days of the conduct alleged below, McCoy Jr. filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00871 against OEM.

17.     On or about June 16, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to McCoy Jr. regarding the Charges of Discrimination brought by McCoy Jr. against OEM in EEOC Agency Charge No. 532-2021-00871.

18.     McCoy Jr. received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

19.     McCoy Jr. has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

20.     McCoy Jr. has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

21.     This Court has supplemental jurisdiction over McCoy Jr.'s state law claims pursuant to 28 U.S.C. § 1367, as McCoy Jr.'s state law claims are so closely related to his federal law

claims that they form part of the same case or controversy under Article III of the United States Constitution.

22.    All or some of the material events in this matter occurred in Lorain County, state of Ohio.

## FACTS

23.    McCoy Jr. is a former employee of OEM.

24.    On or about November 4, 2018, McCoy Jr. began working for OEM.

25.    OEM employed McCoy Jr. as a Driver.

26.    McCoy Jr. did not have a history of meaningful discipline during his employment with OEM.

27.    McCoy Jr. suffers from Crohn's Disease. ("Medical Condition").

28.    McCoy Jr.'s Medical Condition constitutes a physical impairment.

29.    As a result of his Medical Condition, McCoy Jr. was at times unable to work when his symptoms flared up.

30.    McCoy Jr.'s Medical Condition substantially impaired one or more of his major life activities, including working.

31.    McCoy Jr. disclosed his Medical Condition to OEM.

32.    Revolinsky was McCoy Jr.'s supervisor.

33.    During all material events asserted herein, Revolinsky has and/or had authority to hire, fire, and/or discipline employees.

34.    Revolinsky did not participate in the decision to hire McCoy Jr.

35.    McCoy Jr. disclosed his Medical Condition to Revolinsky.

36.    Revolinsky perceived McCoy Jr.'s Medical Condition to substantially impair one or more of his major life activities, including working.

4

37. Matakovich was McCoy Jr.'s supervisor.

38. During all material events asserted herein, Matakovich has and/or had authority to hire, fire and/or discipline employees.

39. Matakovich did not participate in the decision to hire McCoy Jr.

40. McCoy Jr. disclosed his Medical Condition to Matakovich.

41. Matakovich perceived McCoy Jr.'s Medical Condition to substantially impair one or more of his major life activities, including working.

42. As a result of McCoy's Medical Condition, McCoy Jr. is and was considered disabled within the meaning of R.C. § 4112.01 *et seq*.

43. McCoy Jr.'s Medical Condition constitutes a disability.

44. Despite any actual or perceived disabling condition, McCoy Jr. was still able to perform the essential functions of his job, with or without accommodation.

45. McCoy Jr. applied and was approved for leave under the Family Medical Leave Act ("FMLA") in or around December 2019.

46. McCoy Jr. took FMLA protected leave when his Medical Condition flared up.

47. When McCoy Jr. took FMLA leave for his Disability, OEM expressed disapproval because they had to find someone to cover his route.

48. When McCoy Jr. returned from FMLA leave, OEM assigned McCoy to drive as a "filler" ("McCoy Jr. Job Reassignment").

49. The McCoy Jr. Job Reassignment was an adverse action against McCoy Jr.

50. The McCoy Jr. Job Reassignment was an adverse employment action against McCoy Jr.

51. The McCoy Jr. Job Reassignment was effectuated in retaliation for McCoy Jr.'s use of FMLA leave.

52. After the McCoy Jr. Job Reassignment, McCoy Jr. was responsible for covering routes when other drivers took days off from work.

53. After McCoy Jr. was reassigned as a "filler," he requested to rearrange his driving route so his deliveries to businesses with restrooms occurred earlier in the day ("Route Request").

54. McCoy Jr.'s Route Request constituted an accommodation request.

55. Revolinsky granted McCoy Jr.'s Route Request and allowed McCoy Jr. to devise the route in the way which best accommodated McCoy Jr.'s Medical Condition.

56. On or about January 22, 2021, Matakovich texted McCoy Jr. and informed McCoy Jr. that his coworker could assist McCoy with his Rocky River Cryo delivery since he had a delivery for the same place.

57. McCoy Jr. usually delivered to Rocky River Cryo last according to his Route Request.

58. On or about January 22, 2021, McCoy Jr. completed his route and returned to OEM.

59. When McCoy Jr. returned to OEM after completing his route on January 22, 2021, Revolinsky accused McCoy Jr. of disobeying an order ("Revolinsky Accusation").

60. In the Revolinsky Accusation, Revolinsky claimed Matakovich has texted directions to McCoy Jr. to deliver to Rocky River Cryo before making his other deliveries.

61. Revolinsky's Accusation was contrary to McCoy Jr.'s Route Request.

62. In response to the Revolinsky Accusation, McCoy Jr. offered to show Revolinsky the text messages he had received that morning from Matakovich.

63. Revolinsky refused to view McCoy Jr.'s messages in order to verify the accuracy of the Revolinsky Accusation.

64. Part of McCoy Jr.'s assigned duties involved working in the fill shop where he filled propane tanks.

65. McCoy Jr. worked in the fill shop when he was not assigned to drive routes.

66. A propane gauge is a necessary safety tool used to fill propane tanks.

67. During McCoy Jr.'s employment with OEM, a propane gauge was missing from the fill shop.

68. Filling propane tanks without a propane gauge caused a risk of explosion.

69. A propane tank had previously exploded at the fill shop as a result of failing to fill the tank with a propane gauge.

70. Filling propane tanks without a propane gauge was a violation of OEM safety procedures.

71. Alternatively, filling propane tanks without the use of a propane gauge is acceptable under OEM safety procedures.

72. McCoy Jr. was concerned about the lack of a propane gauge.

73. McCoy Jr. asked Revolinsky about the missing propane gauge several times during his employment with OEM ("Propane Gauge Complaints").

74. In response to McCoy Jr.'s Propane Gauge Complaints, Revolinsky assured McCoy Jr. that a replacement propane gauge had been ordered and was on its way.

75. On or about January 25, 2021, McCoy Jr. messaged Matakovich and Revolinsky about not having access to a propane gauge ("Propane Gauge Written Complaint").

76. In the Propane Gauge Written Complaint, McCoy Jr. asked Matakovich and Revolinsky if he should travel to OEM headquarters in Sandusky to secure a propane gauge.

77. By asking if he should travel to the OEM headquarters to get the gauge, McCoy Jr. informed Matakovich and Revolinsky that he planned to notify OEM headquarters that Matakovich and Revolinsky were permitting employees to fill propane tanks without the use of a propane gauge.

78.  Matakovich and Revolinsky understood the Propane Gauge Written Complaint to be an expression of McCoy Jr.'s intention to inform OEM headquarters that Matakovich and Revolinsky were permitting employees to fill propane tanks without the use of a propane gauge.

79.  Within an hour of receiving the Propane Gauge Written Complaint, Revolinsky demanded to meet with McCoy Jr. ("January 25, 2021 Meeting").

80.  At the January 25, 2021 Meeting, Revolinsky yelled at McCoy Jr.

81.  At the January 25, 2021 Meeting, Revolinsky terminated McCoy Jr.'s employment.

82.  At the January 25, 2021 Meeting, Revolinsky told McCoy Jr. his employment was terminated due to his failure to follow directions.

83.  At the January 25, 2021 Meeting, McCoy Jr. informed Revolinsky that no one had told him that he had to make his deliveries in a certain order.

84.  Having to drive a route in a certain order was contrary to McCoy Jr.'s agreed upon accommodation for his disability.

85.  Having to drive a route in a certain order was contrary to McCoy Jr.'s Route Request that was granted to accommodate McCoy Jr.'s Medical Condition.

86.  Non-disabled drivers were allowed to choose the order of deliveries when no order instructions were provided.

87.  Non-disabled drivers were not yelled at for failure to follow directions when there were no directions given.

88.  Non-disabled drivers did not have their employment terminated for failure to follow directions when there were no directions given.

89. Employees who had not used FMLA leave did not have their employment terminated for failure to follow directions when there were no directions given.

90. Employees who had not complained of safety violations did not have their employment terminated for failure to follow directions when there were no directions given.

91. Upon information and belief, after the termination of McCoy Jr.'s termination, OEM employees have continued to fill propane tanks without a propane gauge.

92. OEM's purported reason for termination is pretext for disability discrimination.

93. OEM's purported reason for termination is pretext for unlawful retaliation.

94. OEM's purported reason for termination is not the actual reason for termination.

95. Upon information and belief, Defendants have a progressive disciplinary policy ("Progressive Discipline Policy").

96. Defendants have used the Progressive Discipline Policy when disciplining non-disabled employees.

97. Defendants have used the Progressive Discipline Policy when disciplining employees who have not requested a disability accommodation.

98. Defendants have used the Progressive Discipline Policy when disciplining employees who have not utilized a disability accommodation.

99. Defendants have used Progressive Discipline Policy when disciplining employees who have not complained of safety violations.

100. Defendants have used the Progressive Discipline Policy when disciplining employees who have not threatened to inform OEM headquarters about the safety violation.

101. Defendants have used the Progressive Discipline Policy when disciplining employees who have not utilized FMLA leave.

102. Under Progressive Discipline Policy, McCoy Jr. had not received any meaningful discipline.

103. Under Progressive Discipline Policy, McCoy Jr. had not received any written warnings.

104. Under Progressive Discipline Policy, McCoy Jr. had not been suspended.

105. Defendants skipped steps under the Progressive Discipline Policy when they terminated McCoy Jr.'s employment.

106. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

107. Skipping steps under the Progressive Discipline Policy is an adverse action.

108. Terminating McCoy Jr.'s employment was an adverse employment action.

109. Terminating McCoy Jr.'s employment was an adverse action.

110. Defendants knowingly skipped steps under the Progressive Discipline Policy when they terminated McCoy Jr.'s employment.

111. Defendants intentionally skipped steps under the Progressive Discipline Policy when they terminated McCoy Jr.'s employment.

112. Defendants willfully skipped steps under the Progressive Discipline Policy when they terminated McCoy Jr.'s employment.

113. Defendants knowingly committed an adverse employment action against McCoy Jr.

114. Defendants intentionally committed an adverse employment action against McCoy Jr.

115. Defendants willfully committed an adverse employment action against McCoy Jr.

116. Defendants knowingly committed an adverse action against McCoy Jr.

117. Defendants intentionally committed an adverse action against McCoy Jr.

118. Defendants willfully committed an adverse action against McCoy Jr.

119. Defendants knowingly terminated McCoy Jr. employment.

120.   Defendants intentionally terminated McCoy Jr.'s employment.

121.   Defendants willfully terminated McCoy Jr.'s employment.

122.   The above facts demonstrate Defendants engaged in a pattern and practice of disability discrimination.

123.   The above facts demonstrate Defendants engaged in a pattern and practice of retaliation.

124.   There was a causal connection between McCoy Jr.'s disability and Defendants' termination of McCoy Jr.'s employment.

125.   There was a causal connection between McCoy Jr.'s safety violation complaints and Defendant's termination of McCoy Jr.'s employment.

126.   There was a causal connection between McCoy's request for disability accommodation and Defendants' termination of McCoy Jr.'s employment.

127.   There was a causal connection between McCoy's use of disability accommodations and Defendants' termination of McCoy Jr.'s employment.

128.   There was a causal connection between McCoy's use of FMLA leave and Defendants' termination of McCoy Jr.'s employment.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 ET SEQ
**(Only Against OEM)**

129.   McCoy Jr. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

130.   Defendants treated McCoy Jr. differently than other similarly situated employees based on his disabling condition.

131.   Defendants treated McCoy Jr. differently than other similarly situated employees based on his perceived disabling condition.

132. Defendants failed to make reasonable accommodation for McCoy Jr.'s Medical Condition.

133. Prior to terminating his employment, Defendants failed to engage in the interactive process to determine whether there was a reasonable accommodation for McCoy Jr.'s Medical Condition.

134. OEM violated the Americans with Disabilities Act by effectuating the McCoy Jr. Job Reassignment.

135. OEM violated the Americans with Disabilities Act by targeting McCoy Jr. for termination because of his disabilities.

136. OEM violated the Americans with Disabilities Act by applying their employment policies in a disparate manner based on whether or not an employee is disabled.

137. OEM violated the Americans with Disabilities Act by applying their disciplinary policies in a disparate manner based on whether or not an employee is disabled.

138. OEM violated the Americans with Disabilities Act by using an employee's status as disabled or non-disabled as a factor when making significant employment-related decisions such as hiring, firing, and promotion opportunities.

139. OEM violated the Americans with Disabilities Act by using an employee's status as disabled or non-disabled as a factor when evaluating an employee's performance.

140. OEM violated the Americans with Disabilities Act by permitting supervisory employees to make harassing and/or disparaging comments to disabled employees, like McCoy Jr.

141. OEM violated the Americans with Disabilities Act by permitting supervisory employees to force disabled subordinate employees to perform tasks in a manner that violated the employees' need for an accommodation.

142. On or about January 25, 2021, OEM terminated McCoy Jr.'s employment without just cause.

143. OEM terminated McCoy Jr.'s employment based his disability.

144. OEM terminated McCoy Jr.'s employment based his perceived disability.

145. OEM violated the Americans with Disabilities Act when it terminated McCoy Jr. on the basis of his disability.

146. OEM violated the Americans with Disabilities Act when it discharged McCoy Jr. on the basis of his perceived disability.

147. OEM violated the Americans with Disabilities Act by discriminating against McCoy Jr. on the basis of his perceived disabling condition.

148. As a direct and proximate result of Defendant's conduct, McCoy Jr. suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT II: DISABILITY DISCRIMINATION
### (Only Against OEM)

149. McCoy Jr. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

150. McCoy Jr. has been diagnosed with Crohn's disease.

151. McCoy Jr. is disabled as a result of living with Crohn's disease.

152. In the alternative, OEM perceived McCoy Jr. as being disabled.

153. McCoy Jr.'s condition constituted a physical impairment.

154. McCoy Jr.'s condition substantially impaired one or more of his/her major life activities including working.

155. McCoy Jr. is disabled.

156.    OEM perceived McCoy Jr.'s condition to substantially impair one or more of his major life activities including working.

157.    OEM treated McCoy Jr. differently than other similarly-situated employees based on his disabling condition.

158.    OEM treated McCoy Jr. differently than other similarly-situated employees based on his perceived disabling condition.

159.    Defendants violated R.C. § 4112.01 *et seq.* by treating McCoy Jr. differently from other similarly situated, non-disabled employees.

160.    Defendants did not terminate other similarly situated non-disabled employees.

161.    Defendants violated R.C. § 4112.01 *et seq.* by targeting McCoy Jr. for termination because of his disabilities.

162.    Defendants violated R.C. § 4112.01 *et seq.* by applying their employment policies in a disparate manner based on whether or not an employee is disabled.

163.    Defendants violated R.C. § 4112.01 *et seq.* by applying their disciplinary policies in a disparate manner based on whether or not an employee is disabled.

164.    Defendants violated R.C. § 4112.01 *et seq.* by using an employee's status as disabled or non-disabled as a factor when making significant employment-related decisions such as hiring, firing, and promotion opportunities.

165.    Defendants violated R.C. § 4112.01 *et seq.* by using an employee's status as disabled or non-disabled as a factor when evaluating an employee's performance.

166.    Defendants violated R.C. § 4112.01 *et seq.* by permitting supervisory employees to make harassing and/or disparaging comments to disabled employees, like McCoy Jr.

167. Defendants violated R.C. § 4112.01 *et seq.* by permitting supervisory employees to force disabled subordinate employees to perform tasks in a manner that violated the employees' need for an accommodation.

168. On or about January 27, 2021, Defendant terminated McCoy Jr.'s employment without just cause.

169. OEM terminated McCoy Jr.'s employment based his disability.

170. OEM terminated McCoy Jr.'s employment based his perceived disability.

171. OEM violated R.C. §4112.02 by effectuating the McCoy Jr. Job Reassignment.

172. OEM violated R.C. §4112.02 when it discharged McCoy Jr. based on his disability.

173. OEM violated R.C. §4112.02 when it discharged McCoy Jr. based on his perceived disability.

174. OEM violated R.C. §4112.02 by discriminating against McCoy Jr. based on his disabling condition.

175. OEM violated R.C. §4112.02 by discriminating against McCoy Jr. based on his perceived disabling condition.

176. McCoy Jr. suffered emotional distress as a result of OEM's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

177. As a direct and proximate result of OEM's conduct, McCoy Jr. suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

178. McCoy Jr. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

179.    Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

180.    OEM is a covered employer under the FMLA.

181.    During his employment, McCoy Jr. qualified for FMLA leave.

182.    During his employment, McCoy Jr. requested and was approved to take FMLA leave.

183.    When McCoy Jr. took FMLA leave during his employment, OEM was upset because it had to find someone to cover his route.

184.    By getting upset when McCoy Jr. took FMLA leave, OEM discouraged further use of FMLA leave by McCoy Jr.

185.    By discouraging further use of FMLA leave, OEM unlawfully interfered with McCoy Jr.'s exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

186.    As a direct and proximate result of Defendants' conduct, McCoy Jr. is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## **COUNT IV: RETALIATION IN VIOLATION OF THE FMLA**

187.    McCoy Jr. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

188.    During his employment, McCoy Jr. utilized FMLA leave.

189.    After McCoy Jr. utilized his qualified FMLA leave, Defendants retaliated against him.

190.    Defendants retaliated against McCoy Jr. effectuating the McCoy Jr. Job Reassignment.

191.    Defendants retaliated against McCoy Jr. by terminating his employment.

192.    Defendants willfully retaliated against McCoy Jr. in violation of U.S.C. § 2615(a).

193.   As a direct and proximate result of Defendants' wrongful conduct, McCoy Jr. is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

### COUNT V: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.
### (Only Against OEM)

194.   McCoy Jr. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

195.   McCoy Jr. reported and complained several times to his supervisors that filling propane tanks without a propane gauge violated safety procedures.

196.   McCoy Jr. reasonably believed that requiring the propane tanks to be filled without a gauge constituted a criminal act.

197.   McCoy Jr. reasonably believed that requiring the propane tanks to be filled without a gauge constituted a threat to the public's health or safety.

198.   McCoy Jr. verbally complained to Defendants regarding this conduct.

199.   McCoy Jr. complained to Defendants in writing regarding this conduct,

200.   McCoy Jr. gave Defendants an opportunity to cure the reported misconduct.

201.   Defendants retaliated against McCoy Jr. by terminating his employment based on his complaints regarding this conduct.

202.   Defendants' termination of McCoy Jr. was in violation of O.R.C. § 4113.52.

203.   As a direct and proximate result of Defendants' conduct, McCoy Jr. suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Only Against OEM)

17

204. McCoy Jr. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

205. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee who reports actions that cause and/or create a dangerous and unsafe work environment.

206. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

207. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

208. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if he is terminated in retaliation for reporting to his employer that he is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

209. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

210. Defendants' termination of McCoy Jr. jeopardizes these public policies.

211. Defendants' termination of McCoy Jr. was motivated by conduct related to these public policies.

212. Defendants had no overriding business justification for terminating McCoy Jr.

213. As a direct and proximate result of Defendants' conduct, McCoy Jr. has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
**(Against All Defendants)**

214. McCoy Jr. restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

215. Pursuant to R.C. § 4112.02(J), it is unlawful "[f] or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

216. Revolinsky aided, abetted, incited, coerced, and/or compelled OEM's discriminatory termination of McCoy Jr.

217. Matakovich aided, abetted, incited, coerced, and/or compelled OEM's discriminatory termination of McCoy Jr.' employment.

218. Revolinsky violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

219. Matakovich violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting and inciting discrimination.

220. McCoy Jr. suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

221.    As a direct and proximate result of Defendants' conduct, McCoy Jr. has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

(a) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate McCoy Jr. for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(b) Awarding McCoy Jr. compensatory and monetary damages against Defendants to compensate McCoy Jr. for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate McCoy Jr. for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate McCoy Jr. for harm to her professional and personal reputation and loss of career fulfillment;

(e) An award of damages for any and all other monetary and/or non-monetary losses suffered by McCoy Jr. in an amount to be determined at trial, plus prejudgment interest;

(f) An award of punitive damages;

(g) An award of costs that McCoy Jr. has incurred in this action, as well as McCoy Jr.'s reasonable attorneys' fees to the fullest extent permitted by law; and

(h) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

_s/ Andrew Pappert_____
Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:     (216) 291-5744
Email:  drew.pappert@spitzlawfirm.com
            brian.spitz@spitzlawfirm.com

*Attorneys for Plaintiff Donald McCoy, Jr.*

## **JURY DEMAND**

Plaintiff Donald McCoy Jr. demands a trial by jury by the maximum number of jurors permitted.

_s/ Andrew Pappert_____
Andrew D. Pappert (0093964)
**THE SPITZ LAW FIRM, LLC**